UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JEFFREY SCOTT HORNOFF,

Plaintiff

v.

THE CITY OF WARWICK, RHODE ISLAND; RICHARD SANTOS and THOMAS NYE, members of the Warwick police Department, in their individual capacities; and JOHN AND JANE DOES 1-10, members of the Warwick Police Department, in their individual and supervisory capacities; THE STATE OF RHODE ISLAND; RICHARD HURST and THOMAS DENNISTON, members of the Rhode Island State Police, in their individual capacities; and JOHN AND JANE DOES 11-20, members of the Rhode Island State Police, in their individual and supervisory capacities,

Defendants.

Civil Action No. 05-446ML

**PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS'**
**MOTION TO STRIKE OBJECTIONS AND MOTION TO COMPEL**

Plaintiff Jeffrey Scott Hornoff ("Hornoff") respectfully submits this opposition to State Defendants' Motion to Strike Objections and Motion to Compel.

For the sake of context, in this civil rights action the vast majority of discoverable information is in the possession, custody and control of the Defendants. In particular, the City Defendants and the State Defendants have all of the Cushman murder investigation materials, including volumes of witness interview notes, police reports, forensic reports and related relevant information. By contrast, the discoverable information Hornoff possesses relates principally to his injury. At the time he was investigated, charged, tried and convicted (and since), Hornoff

was privy only to the limited information turned over to his criminal defense counsel in discovery by the Attorney General's Office.

In this action, Hornoff has responded to 96 interrogatories propounded by the State Defendants, many of them duplicative and asking for Hornoff to "state the basis" of allegations in his 191 paragraph complaint. Hornoff has responded to all 96 interrogatories to the best of his ability. Presumably, as discovery proceeds and the defendants produce information Hornoff seeks in discovery, Hornoff will be in a position to supplement his current responses.[1]

For the reasons set forth below, State Defendants' unnecessary motion should be denied.

## BACKGROUND

On October 21, 2005, Hornoff commenced this action by filing a detailed, thirty-two page complaint. See Complaint And Jury Demand, attached to the Affidavit of Robert N. Feldman, Exhibit A ("Feldman Aff., Ex. __").[2] On April 19, 2006, Hornoff responded to a total of 96 interrogatories served by Defendants Hurst and Denniston.[3] See Hornoff's Responses to Interrogatories Propounded by Defendant Richard Hurst, Hornoff's Responses to Interrogatories Propounded by Thomas Denniston, Hornoff's Responses to Requests for Documents by Defendant Richard Hurst, and Hornoff's Responses to Requests for Documents by Thomas Denniston, Feldman Aff., Ex. B. On May 8, 2006, the State Defendants complained, by letter, that certain of Hornoff's interrogatory answers were deficient, and took issue with certain of Hornoff's objections asserted in response to the State Defendants' interrogatories and document requests. See May 8, 2006 Letter From Rebecca Tedford Partington To Robert N. Feldman,

[1] State Defendants have themselves produced precious little information in response to Hornoff's discovery requests. Moreover, State Defendants have not responded to Hornoff's May 25, 2006 letter asking for prompt supplementation of the State Defendants' deficient discovery responses.

[2] Hornoff submits herewith a copy of the Complaint for the Court's convenience, as certain disputed interrogatories refer to specific paragraphs in the Complaint.

[3] Hornoff did not oppose the State Defendants' motion for leave to serve up to 50 interrogatories, but only asked that he also be permitted to serve up to 50 interrogatories. State Defendants refused Hornoff's request.

Feldman Aff., Ex. C.[4] In particular, the State Defendants identified 38 interrogatory answers that they claim are deficient.[5]

In response to the May 8, 2006, letter, counsel for Hornoff attempted to engage counsel for the State Defendants in a discovery conference to narrow or resolve the discovery issues raised by the State Defendants. See, e.g., May 16, 2006 Electronic Mail From Robert N. Feldman To Rebecca Tedford Partington, Feldman Aff. Ex. D. Due to mutual scheduling difficulties, the parties did not conduct a discovery conference, but on or about May 19, 2006, counsel for Hornoff informed counsel for State Defendants that a written response regarding the discovery issues would be forthcoming. Feldman Aff. ¶ 10. On May 25, 2006, in an effort to resolve or narrow the discovery issues raised, Hornoff responded fully to the State Defendants in a six-page letter. See May 25, 2006 Letter From Robert N. Feldman To Rebecca Tedford Partington, Feldman Aff, Ex. E. Unbeknownst to Hornoff's counsel, State Defendants had filed the present motion to compel two days earlier.

State Defendants did not respond to Hornoff's May 25th letter. Instead, on June 8, 2006, Hornoff again attempted to resolve or narrow the discovery issues by contacting the State Defendants' counsel. In response, the State Defendants stated that Hornoff's letter of May 25, 2006 resolved certain of the State Defendants' issues, but that the State Defendants wished to press their motion to compel with respect to Hornoff's Interrogatory Answers Nos. 3, 21, 23, 25, 27, 32, 33, 34, 36, 38, 40, 42, and 43. See June 8, 2006 Electronic Mail Chain Between Robert N. Feldman And Parisa Beers, Feldman Aff. Ex. F.

---

[4] To avoid confusion we note that State Defendants refer to "correspondence dated May 9, 2006," but the discovery letter is dated May 8, 2006.

[5] Because both sets of interrogatories (Hurst's and Denniston's) were identical, there are actually only 19 interrogatories the State Defendants identified as deficient. They are: 3 (misidentified as 2), 7, 9, 10, 11, 15, 21, 22, 23, 38, 40, 43, 25, 27, 32, 33, 34, 36, 42.

**MOTION TO STRIKE SHOULD BE DENIED**

State Defendants first take issue with general objections stated in Hornoff's document request responses and interrogatories. As an initial matter, the general objections the State Defendants would have this Court strike in a wholesale manner are proper. In short, the objections are intended to: preserve Hornoff's right to supplement his responses, if necessary; allow Hornoff to protect privileged information; protect Hornoff from the burden of producing documents already in the possession, custody or control of the State; and preserve other reasonable objections.

More importantly, as Hornoff has explained to the State Defendants (see May 25, 2006 Letter at 2, Feldman Aff., Ex. E.), Hornoff is not withholding documents or information based on any objection (other than privilege) asserted in his document requests and interrogatories. In other words, while the objections are asserted to preserve Hornoff's rights (i.e., the right to supplement if Hornoff comes into possession of additional information), nothing of a non-privileged nature has been withheld based on the general objections. Under these circumstances, it is not at all clear what the State Defendants would have the Court do, or why striking the objections would serve to advance discovery in this matter.[6]

**STATE DEFENDANTS' MOTION TO COMPEL SHOULD BE DENIED**

In addition to seeking to strike Hornoff's objections, State Defendants seek to compel further answers to certain interrogatories. Presently, there are 13 disputed interrogatories, each of which is addressed below. For the reasons set forth below, the State Defendants' Motion to Compel should be denied.

---

[6] Incidentally, State Defendants have not responded to the May 25th offer to set a time and date for the inspection of responsive documents produced by Hornoff as described in the May 25th letter. See May 25, 2006 Letter at 2-3, Feldman Aff, Ex. E.

**Interrogatory No. 2 (Identified as No. 3 in the State Defendants' May 8th Letter)**

Interrogatory No. 2 asks that Mr. Hornoff identify persons with information regarding this matter, and for an identification of what information each person might have. The vast majority of the more than 100 identified persons are witnesses that the State Police interviewed or relied upon during the prosecution of Hornoff. Many of the individuals testified at trial or before the grand jury, and the State Defendants have equal access to their testimony. Nevertheless, Hornoff has offered to supplement this Answer to the best of his ability, by providing further information concerning the categories of knowledge each person may possess. See May 25, 2006 Letter at 3, Feldman Aff, Ex. E. The State Defendants have not indicated why Hornoff's offer is unacceptable. In any event, because the information sought is uniquely within the State Defendants possession, custody or control, the motion should be denied.

**Interrogatory No. 21**

Interrogatory No. 21 asks Hornoff to state "how the allegations contained in paragraph 98 of [Hornoff's] Complaint are relevant in any way to [Hornoff's] loss." Answer to Hurst's Interrogatory No. 21, Feldman Aff., Ex. B. (Paragraph 98 of the Complaint alleges that in the wake of Hornoff's conviction, Hurst and Denniston were each promoted. See Complaint ¶ 98, Feldman Aff., Ex. A.) In response to Interrogatory No. 21, Hornoff gave a full answer (and presumably the answer the State Defendants sought), acknowledging that Hurst's and Denniston's promotions were not the cause of Hornoff's loss.

On May 8th, the State Defendants complained that Hornoff's answer was inadequate. In trying to determine why the State Defendants considered Hornoff's answer was unsatisfactory or deficient, Hornoff's May 25th letter stated:

> By his response, Mr. Hornoff acknowledges that the promotions that Defendants Hurst and Denniston received did not contribute to the damages he suffered. If

> you are looking for something more from this Response, please let me know what you expect.

See May 25, 2006 Letter at 3, Feldman Aff, Ex. E. The State Defendants have not responded to this letter, nor have they clarified what supplementation would prove satisfactory.

**Interrogatory Nos. 23, 38, 40 and 43**

Interrogatory Nos. 23, 38, 40 and 43 are duplicative,[7] and generally ask for information related to mental and physical injuries and damages Hornoff has suffered as a result of the allegations set forth in his Complaint. Hornoff has clearly set forth the nature of his injuries in Paragraphs 122-24 of the Complaint. As indicated in his Responses to these Interrogatories, this information will be subject to expert opinion and these Responses will be supplemented within the time frame set by the Court for expert disclosures. In addition, Hornoff has made available medical records that describe Hornoff's mental and physical damages, as alleged in the Complaint. In fact, by Hornoff's May 25th letter, State Defendants were specifically made aware that such records are available. See May 25, 2006 Letter at 2, Feldman Aff, Ex. E (identifying a category of available documents as "relating to Mr. Hornoff's medical care").

**Interrogatory Nos. 25, 27 and 32**

For Interrogatory Answer Nos. 25, 27 and 32, the State Defendants complain that Hornoff refers "to the facts set out in the Complaint." This is not correct. Two of these interrogatories ask that Hornoff "state the basis" for summary allegations in the Complaint (see, e.g., Complaint ¶¶ 126 and 158), and the third makes a general request for "facts that support" Hornoff's claim that State Defendants' conduct caused or contributed to his damages. Each of these interrogatories is duplicative of the other and/or duplicative of other interrogatories.

---

[7] To understand why each of these requests seeks the very same information, the Court may wish to refer to the underlying similar allegations from the Complaint (¶¶ 123, 181, and 185) for which Interrogatory Nos. 23, 38 and 40 want Hornoff to "state the basis." See Complaint, Feldman Aff., Ex. A.

Accordingly, in his Responses to these Interrogatories, Mr. Hornoff has referred specifically to other interrogatory answers (such as Answer to Interrogatory No. 7), which contain responsive, detailed information, and Hornoff has referred generally to the Complaint's more specific factual allegations. Given the repetitive nature of the interrogatories, Hornoff should not be compelled to respond multiple times to the same request for information.

**Interrogatory No. 33**

Interrogatory No. 33 refers to Paragraph 160 of the Complaint, which states that "[t]he Defendants' conduct violated Hornoff's clearly established rights under the Fourteenth Amendment." This Paragraph states a legal conclusion based on case law interpreting the United States Constitution and factual allegations contained elsewhere in the Complaint, as to which Hornoff has responded to specific Interrogatories. The State Defendants may dispute the legal conclusion stated in Paragraph 160 of the Complaint, but there are no facts underlying that legal conclusion that are not set forth elsewhere in the Complaint or in Hornoff's Responses to Interrogatories. Again, the State should not be able to take advantage Hornoff by requiring him to reanswer the many duplicative interrogatories among the 96 served.

**Interrogatory No. 34**

Interrogatory No. 34 asks for "all facts that support the claims in paragraph 166 of your Complaint." See Answer to Hurst's Interrogatory No. 34, Feldman Aff., Ex. B. Paragraph 166, which appears under the "Count VII" section of the Complaint, generally alleges conspiracy among the defendants. Hornoff's answer set forth the limited information regarding the alleged conspiracy. While the State Defendants may want more information, Hornoff has not yet had access to the voluminous files of the defendants, and, consequently is limited in his ability to respond to this interrogatory at this stage of discovery.

**Interrogatory No. 36**

Interrogatory No. 36 refers to Paragraph 174 of the Complaint, which alleges, among other things, that Defendants acted with malice by, for example, pressuring witnesses in connection with their investigation of Hornoff. Hornoff provided specific, responsive information including:

> Captain Ronald Carter, Hornoff's superior officer, was told by a State Defendant that, in giving testimony, Carter should "try to hurt Scott a bit." Other witnesses, Attorney Daniel Flaherty and John Morgan, possessed information potentially material to the Cushman murder investigation. Because these witnesses attempted to present to State Defendants information that was inconsistent with their theory that Hornoff murdered Cushman, the State Defendants improperly pressured these witnesses, including by the use of threats.

Answer to Hurst/Denniston Interrogatory No. 7 (specifically referenced by Answer to Interrogatory No. 36), Feldman Aff., Ex. B. State Defendants' insistence that Hornoff be further compelled to answer Interrogatory No. 36 should be rejected.

**Interrogatory No. 42**

Interrogatory No. 42 refers to Paragraph 190 of the Complaint, which alleges, among other things, that Defendants failed to undertake the most basic fundamentals of police work in connection with the Hornoff investigation. Hornoff's response refers to the Bristow Report, which details the failings of the City of Warwick police defendants, and Hornoff refers to Interrogatory Answer No. 7, which states in part:

> Defendants lost, misplaced or destroyed the missing gauze pad that appears in crime scene photographs. The gauze pad is seen lying between the latex gloves worn by Todd Barry, Cushman's murderer. If tested, the apparent blood and/or infectious seepage on the gauze pad would not have been matched to Hornoff, and thus had potentially significant exculpatory value. Similarly, unbeknownst to Hornoff, hair and fiber were removed from the latex gloves worn by Barry. This material was never made available to the defense for forensic testing -- the results of which held potentially significant exculpatory value. To date, the hair and fiber evidence has not been located. Finally, the case against Hornoff relied on the presence of blood identified on the interior of a window screen found at the

> crime scene. This blood evidence was significant, as it supported the theory that after murdering Cushman, Hornoff tried to make the crime scene consistent with a break-in having taken place. The blood on the interior of the window was relied upon heavily by the prosecutor in advancing this theory. Subsequent testing has revealed, however, that unbeknownst to Hornoff, his trial counsel, and, presumably, the prosecutor, the substance on the window screen was not blood. Further, Hornoff was interviewed by City Defendants on August 11, 1989, the day after the Cushman murder. This interview was tape recorded. The recording was subsequently lost or destroyed, as was the interview notes/report taken by Lieutenant Johnson. These pieces of evidence -- which contained Hornoff's near-contemporaneous memory of the prior evening's events -- would have strengthened Hornoff's defense at trial. Finally, the substance of another key interview, the interview of Rhonda Hornoff, was mischaracterized in testimony and a report prepared by City Defendants. The allegations of Paragraph 4 of the Complaint also are supported by Defendants' failure to interview, or misconduct in connection with interviews of, material witnesses.

Answer to Hurst/Denniston Interrogatory No. 7 (specifically referenced by Answer to Interrogatory No. 42), Feldman Aff., Ex. B. Hornoff's reference to relevant documents and his reference to a prior interrogatory answer responding to the same question is proper.

**CONCLUSION**

In sum, the State Defendants' Motion to Strike and Motion to Compel should be denied. The granting of either motion would not advance discovery in this matter, as Hornoff has been more than forthcoming in his responses.

FOR THE PLAINTIFF,

Robert N. Feldman, Esq. (admitted *pro hac vice)*
Birnbaum & Godkin, LLP
280 Summer Street
Boston, Massachusetts 02210
Tel: (617) 307-6100, Fax: (617) 307-6101

William C. Dimitri, Esq. (#3129)
462 Broadway
Providence, RI 02909
Tel: (401) 273-9092

## CERTIFICATE OF SERVICE

I, Robert N. Feldman, hereby certify that, on June 9, 2006, I caused a true and correct copy of the foregoing document to be served by electronic mail and First Class Mail upon:

John G. Earle
Breslin, Sweeney & Earle, LLP
222 Jefferson Boulevard, Suite 300
Warwick, RI 02888

Marc DeSisto
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906

Rebecca Tedford Partington
Assistant Attorney General
Deputy Chief – Civil Division
150 South Main Street
Providence, RI 02903

Robert N. Feldman